UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DANIEL SCHEBELL,
    *Plaintiff*,

v.

SCOTT ERFE, LOU DESTEFANO, DR. RUIZ, and JANE VENTRELLA,
    *Defendants*.

No. 3:20-cv-1259 (VAB)

**RULING ON MOTION FOR SUMMARY JUDGMENT**

On August 27, 2020, Daniel Schebell ("Plaintiff"), an inmate who is currently housed at Willard-Cybulski Correctional Institution under the custody of the State of Connecticut Department of Correction ("DOC"),[1] filed this Complaint under 42 U.S.C. § 1983 against Cheshire Correctional Institution ("Cheshire") Warden Scott Erfe, Lou DeStefano, Dr. Ruiz, and Jane Ventrella. Compl., ECF No. 1.

On initial review, the Court determined that Mr. Schebell's case should proceed on his Eighth Amendment claims for damages against Defendants Health Services Administrator Lou DeStefano and Registered Nurse ("RN") Jane Ventrella for deliberate indifference to his medical need for a prescribed nasal spray. Initial Review Order, ECF No. 8 at 11–12 ("IRO").

Defendants have filed a motion for summary judgment, arguing that Mr. Schebell failed to comply with the Prison Litigation Reform Act ("PLRA") and cannot prevail on merits of his Eighth Amendment claims. Mot. for Summ. J., ECF No. 22 ("Mot.").

For the reasons that follow, Defendants' motion for summary judgment is **GRANTED**.

---

[1] The Court takes judicial notice of the information on the publicly available Connecticut DOC website. *See Inmate Information*, State of Connecticut Department of Corrections, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=335822; *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (the Court may "take judicial notice of relevant matters of public record").

I.      **FACTUAL AND PROCEDURAL HISTORY**

     A.      **Factual Background**[2]

The following factual background reflects the Court's review of the Complaint,[3] Defendants' Local Rule 56(a)1 statements of fact, and all supporting materials.[4] *See* Compl., ECF No. 1; Defs.' Local Rule 56(a)1 Statement, ECF No. 22-2 ("Defs.' Local Rule 56(a)1").

All facts are undisputed unless otherwise indicated.

     1.      **The Parties**

Mr. Schebell is a sentenced prisoner who was housed at Cheshire from June 23, 2016, until March 27, 2018, when he was transferred to Carl Robinson Correctional Institution. Defs.' Rule 56(a)1 ¶ 2.

At the time relevant to this action, Nurse Jane Ventrella was employed by DOC as a nurse at Cheshire. *Id.* ¶ 3. From January 2017 through May or June 2018, she also served as Cheshire's Health Services Administrative Remedies Coordinator. *Id.* ¶¶ 3–4. Her duties in this role included collecting and responding to inmate Health Services Administrative Remedies ("HSRs"). *Id.* ¶ 4.

---

[2] Generally, the Court cites only the relevant paragraph in the Local Rule 56(a)1 Statement where a fact is not disputed. The page numbers cited in this Ruling regarding any documents that have been electronically filed refer to the page numbers imprinted by the electronic case filing system on the header of the documents and not to the page numbers of the original documents, if any.

[3] *See Jordan v. LaFrance*, No. 3:18-cv-01541 (MPS), 2019 WL 5064692, at *1 n.1, *4 (D. Conn. Oct. 9, 2019) (a "verified complaint . . . may be considered as an affidavit" for summary judgment purposes"); *Walcott v. Connaughton*, No. 3:17-CV-1150 (JCH), 2018 WL 6624195, at *1, n. 1 (D. Conn. Dec. 18, 2018).

[4] Defendants provided Mr. Schebell with a notice in compliance with Local Rule of Civil Procedure 56(b) that informed him of the requirements for filing his papers in opposition to the motion for summary judgment under Local Rule 56. Notice to *Pro Se Litigant*, ECF No. 22-11. Local Rule 56(a)1 provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." Local Rule 56(a)3 provides that "each denial in an opponent's Local 56(a)2 Statement[] must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial."

During the time relevant to this action, Lou DeStefano served as a Health Services Administrator for both New Haven Correctional Center and Cheshire. *Id.* ¶ 5. In this position, he managed time keeping and scheduling, oversaw the ordering of supplies, and supervised DOC's medical administrative remedies. *Id.* ¶ 6. He did not administer health care to inmates or oversee an inmate's medical care or the medical decisions of an inmate's providers. *Id.* ¶ 7.

### 2. Injury and Medical Treatment

On September 12, 2017, Mr. Schebell was involved in a fight with another inmate and suffered an injury to his nose. *Id.* ¶ 8; Ex. A to Defs.' Mot. for Summ. J., 8–9, ECF No. 23 ("Medical Records") (filed under seal). A physician noted a nasal deviation and ordered an x-ray. Defs.' Rule 56(a)1 ¶ 8; Medical Records at 8. The physician explained to Mr. Schebell that the nasal issue appeared to be a cosmetic concern only. *Id.*

When Mr. Schebell met with Nurse Ventrella about his nasal deviation on September 21, 2017, he denied any difficulty breathing and stated that he experienced only slight discomfort. Defs.' Rule 56(a)1 ¶ 9; Medical Records at 10–11. The medical note showed that he had a pending x-ray request and that he was placed on the physician sick call list to be seen. Medical Records at 11.

Mr. Schebell's x-rays—completed on September 25, 2017—showed a nondisplaced fracture on both sides of his nasal bones, with a slight deviation toward the left. Defs.' Rule 56(a)1 ¶ 10; Medical Records at 22.

On October 1, 2017, Mr. Schebell met with another nurse complaining that he experienced nose pain after a fight. Defs.' Rule 56(a)1 ¶ 11; Medical Records at 14–15. The medical note shows he had some bruising but "no problem breathing notable." Medical Records

3

at 15. Mr. Schebell was provided Motrin for any pain he was experiencing, and his chart was referred to the physician for review. *Id.*

On October 3, 2017, Mr. Schebell met with another nurse about his nose pain and expressed that he needed it to be repaired. Defs.' Rule 56(a)1 ¶ 12; Medical Records at 12–13. He was provided Motrin for his pain and informed that he was on the list to meet with the physician. Defs.' Rule 56(a)1 ¶ 12; Medical Records at 13.

On October 5, 2017, Mr. Schebell met with the physician for a follow-up appointment. Defs.' Rule 56(a)1 ¶ 13; Medical Records at 3. The physician ordered a referral to an ear, nose, and throat ("ENT") specialist for evaluation. Defs.' Rule 56(a)1 ¶ 13. That same day, Dr. Ruiz submitted a referral request, which explained that Mr. Schebell had a nondisplaced nasal fracture with septum deviation and complained of difficulty breathing out of his left nostril and headaches. *Id.* ¶ 14; Medical Records at 27.

On December 6, 2017, Mr. Schebell met with an ENT specialist who noted that he had nasal congestion and an obvious nasal deviation to the left. Defs.' Rule 56(a)1 ¶ 15; Medical Records at 25. The specialist recommended a two-month trial of Flonase (known generically as fluticasone) and a follow-up visit with the specialist in two months to consider surgical options. Defs.' Rule 56(a)1 ¶ 15. That same day, Dr. Ruiz submitted another request for a follow-up visit with the ENT specialist, noting that a trial of Flonase and a return visit to consider treatment options had been recommended. *Id.* ¶ 16; Medical Records at 24.

Flonase is a corticosteroid spray used to treat inflammation and as a means to relieve seasonal and year-round allergic and non-allergic nasal symptoms, such as stuffy or runny nose, itching, and sneezing. Defs.' Rule 56(a)1 ¶ 29. Flonase may take several days to take full effect. *Id.* ¶ 30. Patients are commonly instructed to wait one week to assess the medication's

effectiveness before seeking additional guidance from a medical provider. *Id.* Flonase is not a pain reliever and is not used to treat severe pain, but it may have some impact for pain symptoms by relieving pressure in the nasal area. *Id.* ¶ 31.

On January 24, 2018, Mr. Schebell had a follow-up visit with the ENT specialist. *Id.* ¶ 25; Medical Records at 23. The specialist noted that Mr. Schebell was still experiencing bilateral congestion, recommended the trial of a nasal steroid, and noted no sign of a deviation in the nasal septum that day despite obvious external deformity. Defs.' Rule 56(a)1 ¶ 25. At that time, the specialist did not recommend a septoplasty but indicated that Mr. Schebell could pursue a cosmetic repair of the already healed fracture as an elective procedure. *Id.*

On February 6, 2018, Mr. Schebell's physician entered a two-month order for Flonase. *Id.* ¶ 26; Medical Records at 17. On March 17, 2018, the physician entered another two-month order for Flonase. Defs.' Rule 56(a)1 ¶ 26.

On February 10, 2018, Mr. Schebell met with Nurse Ventrella regarding a swollen eye and associated pain. *Id.* ¶ 27; Medical Records at 4–5. He sustained this injury during recreation when he was elbowed in the left eye and was provided an ice pack and Tylenol for his pain. Medical Records at 5. The medical note for Mr. Schebell's medical treatment on this date does not show that he complained about any condition related to his nose. *Id.*

In his declaration, Dr. Carey Freston, DOC's Regional Medical Director, opines that the ENT specialist did not recommend Flonase to treat pain symptoms, that Mr. Schebell was not placed at a significant risk of harm due to delayed use of Flonase, and that his medical records do not show that his underlying condition was exacerbated by delay in his use of Flonase. Defs.' Rule 56(a)1 ¶¶ 32–33; Ex. G to Defs.' Mot. for Summ. J., at ¶¶ 14–16, ECF No. 22-9 ("Freston Decl.").

### 3. Administrative Remedies

On December 15, 2017, Nurse Ventrella, in her capacity as the Cheshire Health Services Administrative Remedies Coordinator, received an HSR dated October 15, 2017, from Mr. Schebell. Defs.' Rule 56(a)1 ¶ 17.

In his HSR, Mr. Schebell detailed his medical requests and visits[5] and asserted a request for surgery "as soon as possible" due to "constant headaches . . . barely any sleep . . . and emotional stress." Ex. B to Defs.' Mot. for Summ. J., at 3, ECF No. 22-4 ("Pl.'s HSR"). He complained that it "has been over a month now, and I still haven't got this fixed." *Id.*

Nurse Ventrella returned Mr. Schebell's HSR without disposition on December 15, 2017. Defs.' Rule 56(a)1 ¶ 19. She stated: "You were seen by URC on 12/6/17 in which nasal spray was ordered and a [follow-up] in 2 months to consider surgical options. Follow up if you continue to have issues." Pl.'s HSR at 3.

In her declaration, Nurse Ventrella states that after she received Mr. Schebell's HSR, she reviewed his medical file and made a note that she had done so. Ex. D to Defs.' Mot. for Summ. J., at ¶ 10, ECF No. 22-6 ("Ventrella Decl."); Medical Records at 3. Nurse Ventrella represents that she had not been personally involved in Mr. Schebell's treatment related to his nose after he returned from the specialist and therefore based her response to his HSR upon her review of the records, particularly the note from the ENT. Ventrella Decl. ¶ 12. She explains that she wrote

---

[5] Mr. Schebell explained that he suffered a broken nose due to his involvement in the fight on September 12, 2017; that medical staff had informed him that he would be placed on a list for an x-ray; that after he had complained of pain to medical staff in an inmate request, he met with a medical provider on September 21, 2017, and was told that he was on the x-ray list and there was nothing else they could do for him; that x-rays on September 25, 2017, confirmed he had a broken nose; that he wrote to the medical staff on September 27, 2017, about his pain and inability to breath and sleep; that he was seen on October 1, 2017, by medical staff who told him there was nothing that could be done; that he was seen by medical staff on October 3, 2017, and provided with Ibuprofen; and that he was seen on October 15, 2017, by Dr. Ruiz who said he would make a request for surgery at UCONN but there was nothing else he could do. *Id.* at ¶ 18; Ex. B to Defs.' Mot. for Summ. J., at 3, ECF No. 22-4 ("Pl.'s HSR").

"returned without disposition" as her responsive disposition to indicate that she did not consider the HSR either "denied" or "compromised" under the administrative directive. *Id.* ¶ 9. She represents that she did not receive any appeal of her response to Mr. Schebell's HSR, and that he did not otherwise inform her that he had not received his nasal spray. *Id.* ¶ 13.

Head Nurse Debra Cruz, the Cheshire Health Services Administrative Remedy Coordinator, states in her declaration that a search for Mr. Schebell's administrative remedies for health services filed from July 1, 2017, through July 1, 2018, returned only the HSR to which Nurse Ventrella responded on December 15, 2017. Defs.' Rule 56(a)1 ¶ 24; Ex. F to Defs.' Mot. for Summ. J., at ¶ 9, ECF No. 22-8 ("Cruz Decl.").

Mr. Schebell alleges, however, that he filed an HSR appeal to RN Ventrella's response to his Level-1 HSR on December 16, 2017. Compl. ¶ 19. Attached to his Complaint is a copy of an HSR appeal form dated December 16, 2017, in which he wrote:

> This is a [H]ealth Service Review Appeal appealing Nurse Jane Ventrella's response for one [of] my Health Service Review CN 9602. Should have been responded to within 30 days per A.D. 8.9. She took 60 days to responds. She states in her response that the nasal spray was ordered. I haven't received the nasal spray. Therefore, I'm being denied medication ordered by a doctor.

Compl at 27. Mr. Schebell further alleges that he received no response to his appeal. *Id.* ¶ 23.

### 4.     Health Services Administrator DeStefano

Mr. Schebell alleges that he wrote two letters to Health Services Administrator DeStefano. *See* Compl. ¶¶ 20, 22. On December 17, 2017, he allegedly wrote a letter informing Administrator DeStefano that he had not received the nasal spray ordered for him; that he was in extreme pain and was having trouble breathing; and that the medical unit was not doing anything to help him. *Id.* ¶ 20. On March 16, 2018, Mr. Schebell allegedly wrote to Administrator DeStefano again because he had received no response to his prior letter. *Id.* ¶ 22. In this letter,

7

Mr. Schebell allegedly explained that the specialist was surprised to learn that medical staff had not provided him with the nasal spray in accordance with his orders. *Id.*

Mr. DeStefano states that he has no recollection of ever receiving any communication from Mr. Schebell and DOC had no record of any communications from Mr. Schebell to DeStefano. Defs.' Rule 56(a)1 ¶ 28; Ex. E to Defs.' Mot. for Summ. J., at ¶¶ 8–10, ECF No. 22-7 ("DeStefano Decl.").

### B.      Procedural Background

On August 27, 2020, Mr. Schebell filed his Complaint and a motion for leave to proceed *in forma pauperis*, Mot. for Leave to Proceed *In Forma Pauperis*, ECF No. 2.

On September 2, 2020, the Court granted Mr. Schebell's motion to proceed *in forma pauperis*. Order, ECF No. 7.

On April 2, 2021, the Court issued an Initial Review Order, permitting Mr. Schebell's case to proceed on his Eighth Amendment claims against RN Ventrella and Administrator DeStefano in their individual capacities. IRO, ECF No. 8 (April 4, 2021). The Court dismissed without prejudice Mr. Schebell's Eighth Amendment claims against Dr. Ruiz and Warden Erfe, any claims for violation of Administrative Directive 8.9, and any official capacity claims for injunctive and declaratory relief. *Id.* Although the Court provided Mr. Schebell with the opportunity to file an amended Complaint by April 30, 2021, he failed to do so. *See id.* at 15.

The Court set a discovery deadline of October 1, 2021, and a dispositive motion deadline of November 5, 2021. *Id.* at 15–16.

On September 9, 2021, the Court extended the discovery deadline to February 28, 2022, and the dispositive motions deadline to March 30, 2022. Order, ECF No. 15. The Court later

extended the deadlines again to April 29, 2022, for completion of discovery and May 30, 2022, for filing dispositive motions. Order, ECF No. 16 (Feb. 18, 2022).

On May 26, 2022, Defendants filed a motion to extend the dispositive motions deadline to June 7, 2022, which the Court granted. Mot., ECF No. 18; Order, ECF No. 19.

On June 7, 2022, Defendants filed their motion for summary judgment. Mot.

In response, Mr. Schebell filed a document entitled Local Rule 56(a)(2) Statement of Facts in Opposition to the Summary Judgment, in which he states that the motion for summary judgment should be denied, that he should have the right to depose Defendants, and that he was not afforded a right to a deposition. Pl.'s Local Rule 56(a)2, ECF No. 24 (July 12, 2022).[6]

In an order dated October 5, 2022, the Court construed Mr. Schebell's response to the motion for summary judgment as a motion to conduct further discovery by taking a deposition under Federal Rule of Civil Procedure 56(d).[7] Order, ECF No. 26. In this order, the Court instructed Mr. Schebell "to file an affidavit or declaration stating what information he specifically seeks from Defendants through a deposition, what efforts he has made to obtain discovery and why he did not previously seek an extension of discovery, and how the information he seeks will help him respond to Defendants' arguments for entry of summary judgment." *Id.* (citing Fed. R. Civ. P. 56(d); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003)). The Court advised Mr. Schebell that if he did not respond to the order by November 4, 2022, "the Court will consider the arguments in the motion for summary judgment." *Id.*

---

[6] On August 18, 2022, the Court issued an order extending Mr. Schebell's time to file a response to the motion for summary judgment to September 23, 2022. Order, ECF No. 25.

[7] Rule 56(d) provides: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."

To date, Mr. Schebell has not filed an affidavit or declaration in accordance with the Court's Order or any substantive response to the motion for summary judgment. *See* Order, ECF No. 25 (extending Mr. Schebell's deadline to respond to the motion for summary judgment until September 23, 2022); Order, ECF No. 26 (directing Mr. Schebell to file an affidavit or declaration in support of his request to depose Defendants by November 4, 2022). Nor has he filed a motion for extension of time to do so. Accordingly, the Court will now consider the arguments asserted in Defendants' motion for summary judgment.[8]

## II.   STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48.

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly

---

[8] The Court considers Mr. Schebell's request for additional discovery to be abandoned. Even if it were not abandoned, Mr. Schebell's request for additional discovery would be denied for failure to provide a nonspeculative basis for his request to take additional discovery. He fails to explain what information he sought to obtain by deposing Defendants. Even where a Rule 56(d) motion is properly supported with an affidavit, the court may decline to permit additional discovery where the discovery request is "based on speculation as to what potentially could be discovered." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Stroh Cos.*, 265 F.3d 97, 117 (2d Cir. 2001) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994)).

preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (first citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); and then citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

When deciding a motion for summary judgment, a court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier v. Armstrong*, No. 3:99-cv-1559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007). In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in [his] favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013). If there is

any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party for the issue on which summary judgment is sought, then summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## III. DISCUSSION

### A. The PLRA's Exhaustion Requirement

The PLRA, which governs actions brought by prison inmates, requires a prisoner to exhaust administrative remedies prior to filing a federal lawsuit regarding prison conditions. 42 US.C. § 1997e(a) ("'No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Failure to exhaust is an affirmative defense under the PLRA, *Jones v. Bock*, 549 U.S. 199, 217 (2007), and a defendant bears the burden of proving that an inmate did not exhaust his or her remedies prior to filing the action in court, *Johnston v. Maha*, 460 F. App'x 11, 15 (2d Cir. 2012) ("The defendants have the burden of showing that there is no genuine issue of material fact as to exhaustion that would preclude summary judgment.").[9]

Section 1997e(a) applies to all claims regarding prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and it requires exhaustion of any available administrative remedies, regardless of whether they provide the relief the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741

---

[9] Although a defendant bears the burden on this affirmative defense at all times, the plaintiff may still have to adduce evidence in order to defeat a motion for summary judgment. *See Hudson v. Kirkey*, No. 920CV0581 (LEK/DJS), 2021 WL 1966721, at *3 (N.D.N.Y. May 17, 2021) (explaining that once defendant introduces evidence of a functional grievance system, plaintiff could not survive summary judgment without submitting competent evidence to indicate unavailability). While it is a defendant's burden to establish a plaintiff's failure to meet the exhaustion requirement, the plaintiff bears the burden of demonstrating that such a process was unavailable. *Brooks v. Mullen*, No. 14-CV-6690-FPG, 2020 WL 6158614, at *5 (W.D.N.Y. Oct. 21, 2020).

(2001). A claim is not exhausted unless the inmate complies with all administrative deadlines and procedures. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). ). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Bock*, 549 U.S. at 218.

One purpose of the PLRA is to afford inmates and corrections officials an opportunity to address complaints internally before engaging in federal litigation. *Woodford*, 548 U.S. at 93–94. Thus, proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (internal quotation marks omitted). "[I]nmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004). Informal efforts to put prison officials on notice of inmate concerns do not satisfy the exhaustion requirement. *See Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007).

If the deadline to file a grievance has passed, an unexhausted claim is barred from federal court. *See Woodford*, 548 U.S. at 95. Thus, "untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirement." *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (quoting *Woodford*, 548 U.S. at 83–84).

The exhaustion requirement, however, may be excused when the remedy is not available in practice even if it is "officially on the books." *See Ross v. Blake*, 578 U.S. 632, 642–643 (2016). This means that "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 642 (quoting *Booth*, 532 U.S. at 738). The United States Supreme Court has established three

13

circumstances under which an inmate need not exhaust the administrative procedure as it is deemed unavailable: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when a procedure is "so opaque that it becomes, practically speaking, incapable of use;" or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–644. "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs v. Suffolk Cnty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

It is not sufficient for a plaintiff to exhaust his administrative remedies after filing his Complaint; a plaintiff must exhaust his administrative remedies prior to filing the action in federal court. *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), *overruled on other grounds by Porter*, 534 U.S. 516; *Gulley v. Bujnicki*, No. 3:19-CV-903 (SRU), 2019 WL 2603536, at *3 (D. Conn. June 25, 2019).

### B. The Applicability of Administrative Directive 8.9

"[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Bock*, 549 U.S. at 218. At the time relevant to this action, the Connecticut DOC Administrative Directive ("A.D.") 8.9 (revision of July 24, 2012) was in effect.[10] Ex. C to Defs.' Mot. for Summ. J., ECF No. 22-5 ("A.D. 8.9").

---

[10] This version of A.D. 8.9 remained in effect until a revision took effect on April 30, 2021. Defs.' ex. C, ECF No. 22-5. *See also* A.D. 8.9 available at https://portal.ct.gov/DOC/AD/AD-Chapter-8 (last visited October 20, 2022); *Sanchez v. RN Debbie*, No. 3:18-CV-1505 (JCH), 2018 WL 5314916, at *2 (D. Conn. Oct. 26, 2018) (The Court may "take judicial notice of relevant matters of public record.").

A.D. 8.9 (entitled Administrative Remedy for Health Services) governs the administrative remedies for health services at Connecticut DOC facilities. It provides for two types of Health Services Review ("HSR"); first, "Diagnosis and Treatment," which includes a decision not to provide treatment, and second, "Review of an Administrative Issue," which addresses concerns regarding "a practice, procedure, administrative provision or policy, or an allegation of improper conduct by a health services provider." A.D. 8.9 § 9. Both types of HSRs require an inmate to "seek an informal resolution prior to filing for a [HSR]." *Id.* § 10. That informal resolution attempt must occur either "face to face with the appropriate staff member or with a supervisor via written request utilizing CN 9601 Inmate Request Form." *Id.* If an inmate pursues the written option, a DOC official must respond within 15 calendar days. *Id.*

An inmate who is dissatisfied with a diagnosis or treatment may apply for a Health Services Review "if the informal resolution via inmate request was unsuccessful." *Id.* § 11. The inmate must check the Diagnosis/Treatment box on the form (CN 9602), explain concisely the cause of dissatisfaction, and deposit the form in the Health Services Remedies/Review box. *Id.* Upon receipt of a CN 9602, the Health Services Review Coordinator shall schedule a Health Services Review Appointment with the appropriate health care provider. *Id.* § 11(A). "If the physician decides that the existing diagnosis or treatment is appropriate, the inmate shall have exhausted the health services review." *Id.* "The physician shall notify the inmate of the decision, in writing, within ten business days by indicating 'No Further Action' in the disposition field of CN 9602, Inmate Administrative Remedy Form." *Id.* "If the physician decides that a different diagnosis or treatment is warranted, he/she may either (1) act on his/her decision; or, (2) refer the case to the [URC] for authorization by indicating 'Change of Treatment' or 'Referred to URC' as appropriate . . . ." *Id.* § 11(B).

15

An inmate may request review of an Administrative Issue by checking the box marked "All Other Health Care Issues" on the Health Services Review form (CN 9602). The inmate must then provide a concise statement of what the inmate believes to be wrong and how the inmate has been affected, and the inmate must deposit the form in the Health Services box. *Id.* § 12. This request for review shall be evaluated by a Health Services Review Coordinator within thirty days. *Id.* § 12(A). If the inmate is dissatisfied with the response, the inmate may appeal the decision within ten business days. *Id.* § 12(B). The designated facility health services director or designee must decide the appeal and issue a response within fifteen days. *Id.* § 12(C). For all issues relating to compliance with existing standards, this review is final, and the inmate shall have exhausted the requisite Health Services Review process. *Id.* If the matter "relates to a health service policy of the Department, the inmate may appeal to the DOC Director of Health Services" within ten business days from the receipt of the response. *Id.* § 12(D). The Director has thirty days to respond. *Id.* § 12(E). Upon receipt of this decision, the inmate shall have exhausted the Health Services Review for an Administrative Issue. *Id.*

Records of all requests and appeals must be maintained by the health services review coordinator. *Id.* § 13.

In the IRO, the Court permitted Mr. Schebell to proceed with his Eighth Amendment claim for failure to provide a prescribed nasal spray. IRO at 11–12. The Court dismissed all other claims. *Id.* at 14–15. Defendants now argue that Mr. Schebell did not properly exhaust his nasal spray claim because he did not mention it in his original grievance. Mot. at 15. Instead, Defendants contend, Mr. Schebell raised the nasal spray issue for the first time in the appeal that he allegedly filed on December 16, 2017. Defendants argue that a claim is not exhausted under the PLRA if it is raised for the first time in a grievance appeal.

Mr. Schebell does not contest this argument. As noted above, Mr. Schebell's only filing in response to Defendants' motion for summary judgment merely asserts that he has a right to depose Defendants. Pl.'s Rule 56(a)2 ¶ 2.

The Court agrees with Defendants.

Even assuming that Mr. Schebell filed his appeal of Nurse Ventrella's decision, the undisputed record shows that he failed to exhaust properly his claim that he required, but did not receive, his prescribed nasal spray. In his original HSR, Mr. Schebell detailed his prior medical care and requested surgery with a specialist but made no mention of his need for, or failure to receive, nasal spray. As a result, this HSR did not "provide enough information" about his need for the prescribed nasal spray "to allow prison officials to take appropriate responsive measures." *Johnson*, 380 F.3d at 697.

The PLRA "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90–91. Thus, Mr. Schebell could exhaust his Eighth Amendment claims against Defendants only by "using all steps" and "doing so *properly*." *Id.* at 93–94 (internal quotation marks omitted). The record shows that Mr. Schebell failed to properly file an HSR about his need for, or failure to receive, his prescribed nasal spray in accordance with A.D. 8.9, although he clearly had access to his administrative remedies under A.D. 8.9, as he was previously able to file an HSR that requested surgery for his nose. *See Otero v. Purdy*, No. 3:19-cv-01688 (VLB), 2021 WL 4263363, at *10 (D. Conn. Sept. 20, 2021) (noting plaintiff's prior grievance filing demonstrated availability of administrative remedies).

As a result, there is no genuine issue of material fact as to whether Mr. Schebell properly exhausted his remedies under A.D. 8.9 for his Eighth Amendment claims of deliberate indifference to his need for nasal spray. Nor is there any issue of material fact as to whether Mr. Schebell's remedies were not available under *Ross*.

Accordingly, the Court must grant Defendants' motion for summary judgment because there are no disputed issues of fact with regard to Mr. Schebell's failure to comply with the PLRA's exhaustion requirement.[11]

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED** based on Mr. Schebell's failure to exhaust his Eighth Amendment claims.

The Clerk of Court is respectfully directed to enter judgment in Defendants' favor and to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 9th day of December, 2022.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[11] Because Mr. Schebell failed to exhaust his Eighth Amendment deliberate indifference claims in compliance with the PLRA, the Court will not review their merits. *See Feaster v. U.S. Bureau of Prisons*, 37 F. App'x 15, 17 (2d Cir. 2002) (declining to review the merits of un-exhausted claims).